[Cite as *Morris v. Morris*, 2021-Ohio-2677.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALEXANDRA D. MORRIS,　　　　　　:

　　Plaintiff-Appellant,　　　　:
　　　　　　　　　　　　　　　　　　　　No. 109854
　　v.　　　　　　　　　　　　:

APRIL MORRIS, ET AL.,　　　　　:

　　Defendants-Appellees.　　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 5, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-886903

---

### *Appearances:*

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube; The Peccho Law Firm Co., L.P.A., and Andrew J. Wides, *for appellant.*

Lewis, Brisbois, Bisgaard & Smith, L.L.P., Theresa A. Edwards and Bradley J. Barmen, *for appellees.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Alexandra Morris ("appellant" or "plaintiff"), appeals multiple decisions made by the trial court during a bifurcated jury trial, but prior to dismissal due to settlement. For the reasons that follow, we affirm.

## I. Factual Background

{¶ 2} In 2003, Amy M. Morris ("Amy"), appellant's mother, purchased the assets of a market research firm named "Focus Groups of Cleveland Survey Center" — a business that her maternal grandmother, Betty Perry, owned and operated for over 30 years. She purchased the company for $516,000. From this company, Amy launched a new market research company called "Focus Groups." In 2003, Amy issued herself four stock certificates accounting for 125 shares each, totaling 500 outstanding shares. Amy's mother, Bonnie Morris ("Bonnie"), continued her role as bookkeeper and accountant.

{¶ 3} In 2006, Amy was diagnosed with cancer. At that time, appellant was attending Beachwood Middle School. To provide for appellant, her only heir, Amy's estate plan consisted of a pour-over will and trust with appellant as the sole beneficiary. Her Last Will and Testament left all the tangible personal effects of her estate to appellant. But the intangible assets of the estate, including Amy's business interests, were left through the will's residual clause for care and management by the trustees of the trust. Amy nominated her sister, April Morris ("April"), her mother Bonnie, and her father, Jeffrey Morris ("Jeffrey"), as co-executors of the estate.

{¶ 4} Amy designed the trust to hold property for the benefit of appellant until she attained the age of 25, at which time one-half of the trust property would be distributed to her. The remaining trust property would continue to be managed by the trustees until appellant turned 30 years old, at which time the assets would

be released to her. Amy was the trustee during her lifetime, but April, Bonnie, and Jeffrey were all designated as successor co-trustees.

{¶ 5} In December 2009, April moved from Florida to Ohio. She initially lived with her grandmother, Betty, and worked as a nail technician. In April 2010, April moved in with Amy and appellant due to conflicts with Betty.

{¶ 6} Amy succumbed to cancer on December 10, 2010. Appellant was just 17 years old when her mother died. Following her mother's death, appellant continued to live in her home with April until 2011, when she graduated high school and attended The Ohio State University. According to appellant, April treated her as a self-sufficient adult and did little in terms of "parental" support. Rather, appellant's great-grandmother, Betty, assisted her with those necessities.

{¶ 7} On November 11, 2011, Attorney Edward M. Graham filed an application to relieve Amy's estate from probate, which was submitted on behalf of April as the applicant. The application listed the estate property as only 125 shares of Focus Groups stock, with a value of $26,048.10. No other assets were listed, including personal and real property, or the remaining 375 shares of Focus Group that Amy owned at the time of her death. Subsequent to the administration of the estate, Attorney Graham assisted with April's purchase of trust property, to wit, the 125 shares of Focus Group stock. To facilitate this purchase, April resigned as co-trustee of the Trust, and then acquired the 125 shares of Focus Group stock by "assuming $26,048.10" of the company's secured debts. From that point on, April owned Focus Groups.

**{¶ 8}** Despite being the sole beneficiary under both her mother's Will and Trust, appellant was never notified of the existence of these documents, nor was she notified of any legal proceedings regarding her mother's estate. Even when she asked April and Jeffrey about her mother's estate, both claimed that no Will existed. It was not until January 2017, after she located documents in Jeffrey's home, that appellant became aware that her mother had in fact left a Will and Trust, and that she was the sole beneficiary under those documents. Despite her mother's intention to provide for her daughter, appellant received nothing from her mother's estate.

## II. Procedural Background

**{¶ 9}** On October 4, 2017, appellant filed a civil action against April and Jeffrey (collectively "defendants"). The amended complaint alleged that the defendants had engaged in fraudulent concealment, fraud, civil conspiracy, breach of fiduciary duty, interference with an expectancy inheritance, negligence with respect to Amy's Last Will and Testament, and the Amy A. Morris Family Trust, and conversion of property. Claims were initially asserted against Attorney Edward M. Graham and Edward M. Graham Co., L.P.A., for legal malpractice. The claims against Attorney Graham and his company were dismissed prior to trial. Appellant also sought an accounting from the defendants and Focus Groups of Cleveland, Inc. of corporate income, expenditures, and profits beginning in 2010. She further sought a declaratory judgment that the transfer of 125 shares of Focus Groups stock from the Trust to April was void. As relief, appellant sought compensatory and punitive damages, an award of reasonable attorney fees and expenses, prejudgment

interest, disgorgement of profits of Focus Groups, a declaration that the transfer of 125 shares of Focus Groups stock to April was void for lack of consideration, an order compelling April to transfer those shares back to the Trust, and a constructive trust over any assets unlawfully retained by the defendants.

{¶ 10} Defendants April, Jeffrey, and Focus Groups asserted counterclaims against appellant for civil theft, conversion, and declaratory relief as to records taken from Jeffrey's home. Appellant filed an answer, admitting to taking the records from Jeffrey's home, but claimed she did so lawfully.

{¶ 11} The case was assigned to a visiting judge for trial. In March 2020, the matter ultimately proceeded to a bifurcated jury trial, meaning that the jury would first consider liability and compensatory damages, and then reconvene for punitive damages, if necessary. Following the close of evidence during the first phase of trial, the trial court directed verdicts on all claims against Jeffrey. Although the trial court denied appellant's request for a jury instruction regarding the creation of constructive trust, no other objections to the jury instructions or general verdict forms were made by either party. Thereafter, the jury retired to deliberate.

{¶ 12} The jury returned verdicts in favor of appellant and the defendants. Pursuant to the verdict forms and interrogatories, the jury found in favor of appellant on her claims for fraud, breach of fiduciary duty, tortious interference, conversion, and civil conspiracy. The jury entered an amount of $62,000 as "the total amount of compensatory damages awarded to plaintiff" on each of the general verdict forms for each prevailing claim. As for defendants' claims, the jury found in

favor of defendant, April Morris, on her claims for civil theft and conversion. The jury entered an amount of $1.00 as "the total amount of compensatory damages awarded to Counterclaimants April Morris and Focus Groups" on each of the general verdict forms for each prevailing claim.

{¶ 13} After the verdict was read in open court and the jurors were polled, the trial court attempted to discharge the jury. However, the parties reminded the court that the trial was bifurcated and the issue of punitive damages remained pending on both the plaintiff and defendants' claims. The jury was adjourned until the following morning.

{¶ 14} The next morning, and prior to the jury reconvening for the second phase of trial, a discussion occurred between the parties and the court regarding the jury verdict and the jurors' intent when it entered its award on each separate general verdict form. It was the defense's position that the total award was $62,000; not $62,000 for each of the five prevailing claims:

> So, it's our position that the total verdict, and we accept the verdict as $62,000, rather than, you know, compounding the damages for each successive claim arising from the same course of conduct.

(Tr. 1017.)

{¶ 15} It was the plaintiff's position that the jury may have intended to award $62,000 on each prevailing claim and counsel therefore asked that the court seek clarification from the jury:

> Plaintiff is seeking clarification as to the amount of the reported verdict as five separate, well, the titled general verdict forms were signed based on the specific causes of action in the plaintiff's case.

The issue that the plaintiff has with the jury's arrival at their verdict is through the jury interrogatories, it's clear that they're evaluating different conduct, different actions, taken by the defendants in this case.

For example, in one count they're assessing whether concealing the existence of the will and the trust was proven and what their verdict was as to that specific action. Thereafter, they're assessing whether the specific transfer of property from the trust to the fiduciary was proven, and thereby assessing damages as to that specific count.

So the plaintiff's position is simply to seek clarification as to the jury's intended verdict in this case.

(Tr. 1018-1019.)

{¶ 16} Inexplicably, despite the jury still being empaneled for the commencement of the second phase of trial, the trial court denied the plaintiff's request. It reasoned:

There is no need for clarification. The lawsuit was about her claimed loss of inheritance, to wit, the value of the stock at the time of her mother's death. The jury has indicated consistently that their view of that value was $62,000 period.

There may have been six different ways in which you think she was entitled to recover, and the jury agreed with you, but there is only one recovery, and that's $62,000.

(Tr. 1019.) No further discussion occurred between the court or the parties on this issue.

{¶ 17} The next discussion on the record occurred in front of the jury when the court advised the jury that "the parties have resolved what was left of the lawsuit." (Tr. 1019.) The court advised in relevant part,

So now I can finish what I was saying yesterday about your service is over. What was left here was what they call punitive damages, which are rare in civil litigation. I've been sitting for 31 years. Only twice has

there been an award of punitive damages in all the cases that I tried. So that's how rare it is, and I guess they realized that, and settled their differences at least with respect to what was left of the lawsuit.

(Tr. 1020.)

**{¶ 18}** Thereafter, the court discharged the jury. No objection was raised by the parties regarding the trial court's advisement, understanding that settlement had occurred, or discharge of the jury. And no further transcript or App.R. 9(C) statement has been provided to this court regarding any further discussion with the trial court or jurors. Additionally, the terms of the settlement agreement were not placed on the record before the trial court discharged the jury, and a copy of the settlement agreement was not filed with the trial court, and thus unavailable for our review.

**{¶ 19}** The parties do not dispute that they discussed the case with the jurors after the jury was discharged. Through those discussions, it was discovered that the jury had intended to award plaintiff $62,000 on each of her prevailing claims, totaling $310,000. This discovery was contrary to the trial court's unilateral interpretation, and the trial court declined to reconsider the previous motion for clarification or re-empanel the jury to obtain further clarification.

**{¶ 20}** The record reveals that the following day, on March 12, 2020, defense counsel emailed plaintiff's counsel with attachments — "Attached is the Settlement Agreement and Release with the terms agreed to yesterday as well as the Stipulation for Dismissal and Judgment Entry." According to the defendants, counsel for plaintiff requested that the parties renegotiate the settlement agreement. Defense

counsel denied the request, contending that a settlement agreement had already been reached and communicated to the trial court.

{¶ 21} On March 17, 2020, as a result of the communications, the defendants filed a motion to enforce the settlement and requested costs. In the motion, the defendants maintained that the parties orally settled their dispute prior to the start of the punitive phase of trial. The motion also revealed that the parties "collectively agreed" to certain "essential terms before leaving the courthouse," including "(1) a monetary settlement amount; (2) time for payment of the settlement amount; and (3) a formal settlement agreement and release would be signed by all parties to the settlement prior to the distribution of any settlement monies." Included with the motion was the March 12, 2020 email with a "Settlement agreement" attachment. A copy of the proposed settlement agreement was not included with the motion.

{¶ 22} Appellant opposed the motion to enforce the settlement agreement, and concurrently filed a combined motion for reconsideration, relief, stay, and new trial on judgment only (hereinafter "combined motion"). Appellant opposed enforcement of the settlement agreement, contending "that she is not bound by the negotiated settlement agreement * * * and has the right to void and/or rescind the settlement agreement as a matter of contract law because of new evidence that the verdicts were misinterpreted by the court." Appellant maintained that "the new evidence obtained by counsel in this case indicates a clear mutual mistake of fact that undermines the negotiated settlement agreement." The "new evidence" referenced included counsel's summary of the post-trial jury discussion and a March

12, 2020 unsolicited email from the jury foreperson indicating that he was "sickened" by the misinterpretation of their verdict and "hope[d]" that "you were able to adjust your settlement once our intention was made clear." As such, appellant did not deny that she entered into an oral agreement but denied the validity of such agreement. In her brief in opposition, appellant admitted that "the parties engaged in extensive settlement negotiations, and eventually, agreed to a settlement of $120,000."

{¶ 23} In her combined motion, appellant sought "reconsideration of the judgment on the basis of mistake of findings, error, and new evidence under Civ.R. 59, 60, 61, and 62." Appellant requested, pursuant to Civ.R. 62(A), that the trial court stay the judgment during the pendency of the post-trial motions.

{¶ 24} Appellant requested relief under Civ.R. 60(A) that trial court correct the "clerical error" in its interpretation of the jury verdict by either correcting the compensatory jury award or holding an evidentiary hearing. In support, appellant noted receipt of "new evidence" — the jury foreman's email and post-trial conversations with the jury.

{¶ 25} Appellant also requested relief under Civ.R. 61, contending that the court's error in its verdict interpretation was not harmless error and needed to be corrected to serve substantial justice. Additionally, appellant summarily requested that the court grant a new trial pursuant to Civ.R. 59(A)(8) based on newly discovered evidence that the jury intended to award $310,000, and pursuant to Civ.R. 59(B), which allows for post-trial requests. Finally, in her combined motion,

the appellant referenced Civ.R. 41(A), which she contended allows the trial court to order a new trial if it finds a discrepancy between the verdict forms and interrogatories.

{¶ 26} In her combined motion, appellant admitted that the "parties engaged in negotiations and entered an oral, good faith settlement to resolve the case. * * * Upon settlement, the jury was dismissed." Appellant's position in her motion, however, was that the trial court's misinterpretation of the verdict precipitated the settlement, and she should not be bound by the agreement.

{¶ 27} On June 29, 2020, the originally assigned judge denied both motions — the defendants' motion to enforce settlement agreement and the appellant's combined motion. Regarding the defendant's motion, the trial court ruled that it did not have jurisdiction to enforce the settlement agreement because the "court's order disposing of this case did not incorporate the terms of the settlement or expressly retain jurisdiction over settlement." The trial court summarily denied appellant's combined motion.

{¶ 28} Appellant now appeals, challenging rulings and the evidence that occurred during the liability and compensatory phase of trial.

### III. Jurisdiction

{¶ 29} Before addressing the merits of the appeal, we must consider the defendants' argument that this court lacks jurisdiction because there is no final appealable order. In addition to this jurisdictional question, we will also consider whether the appeal is timely. *See Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*,

8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 7 (this court has a duty to examine, sua sponte, potential deficiencies in jurisdiction).

## A. Final Appealable Order

{¶ 30} Under the Ohio Constitution, Article IV, Section 3(B)(2), this court's jurisdiction on appeal is limited to a review of final orders of trial courts. Final orders are those that "dispos[e] of the whole case or some separate and distinct branch thereof." *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 306, 272 N.E.2d 127 (1971). A trial court order is a final, appealable order only if it satisfies the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Kellie Auto Sales, Inc. v. Hernandez*, 10th Dist. Franklin No. 19AP-462, 2020-Ohio-1516, ¶ 13. Pursuant to R.C. 2505.02(B)(1), an order is final and appealable if it "affects a substantial right in an action that in effect determines the action and prevents a judgment." If a trial court order leaves issues unresolved and contemplates further action, then the order is not a final, appealable order. *State ex rel. Keith v. McMonagle*, 103 Ohio St.3d 430, 2004-Ohio-5580, 816 N.E.2d 597, ¶ 4, citing *Bell v. Horton*, 142 Ohio App.3d 694, 696, 756 N.E.2d 1241 (4th Dist.2001).

{¶ 31} According to the defendants, this court lacks jurisdiction because the issue of punitive damages remains pending in the trial court due to the fact that appellant has rescinded her agreement to settle the case. We disagree. The parties advised the court that they settled their dispute, causing the trial court to discharge the jury. The discharge of the jury effectively terminated the trial. The trial court then entered a final judgment on March 11, 2020, finding "Jury returns to hear

arguments on Punitive Damages. Parties settled their dispute. Jury is discharged. FINAL." This order became final and appealable after the trial court subsequently journalized the directed verdict declared during trial.[1]

**B. Timeliness**

{¶ 32} No appeal was taken from the trial court's final orders issued on March 11 and 13, 2020. Instead, on March 24, 2020, appellant filed her combined motion, which included a request for a new trial pursuant to Civ.R. 59. The motion did not dispute whether a settlement between the parties existed; it maintained that the trial court misconstrued the jury's intent and entered an inconsistent verdict. It also did not request relief from judgment pursuant to Civ.R. 60(B). On June 29, 2020, the trial court issued a journal entry denying appellant's combined motion and defendants' motion to enforce the settlement agreement. It is from this order that appellant appeals.

{¶ 33} App.R. 4(A) requires a party to file an appeal within 30 days of a judgment. This time limit is jurisdictional. *Agee v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 103464, 2016-Ohio-2728, ¶ 3. Accordingly, a court of appeals lacks jurisdiction over any appeal that is not timely filed. *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60, 531 N.E.2d 713 (1988).

---

[1]On appeal, appellant denies that she entered into a settlement agreement with the defendants. Accepting appellant's position that she did not agree to settle the case would divest this court of jurisdiction because then the issues of punitive damages and other requested relief remain pending. *See Thompson v. Regency Square Ltd.*, 8th Dist. Cuyahoga Nos. 39435 and 39187, 1979 Ohio App. LEXIS 10840, 7 (July 12, 1979) (appeal was premature because punitive damages phase of trial remained pending).

{¶ 34} Typically, the filing of a motion for new trial pursuant to Civ.R. 59 suspends the running of the time for filing a notice of appeal. However, Civ.R. 59 presupposes as a prerequisite for its application that a trial occurred. In this case, the parties settled their dispute mid-trial. This court has held that when a settlement occurs during trial, a motion for new trial is improper. "The proper method of attacking a settlement agreement entered into during the midst of trial would have been by a Civ.R. 60(B) motion to vacate the settlement agreement." *In re A.I.*, 8th Dist. Cuyahoga No. 81804, 2003-Ohio-2741, ¶ 3, citing *Grossman v. Hawk Mfg. Co.*, 10th Dist. Franklin No. 92AP-1026, 1992 Ohio App. LEXIS 6719 (Dec. 29, 1992). As such, this court has held that when a motion for a new trial is a nullity, it does not extend the time requirement of App.R. 4(A) to file an appeal from the trial court's final judgment. *Id.* at ¶ 4; *Van Wie v. Coachman of Indiana*, 8th Dist. Cuyahoga No. 52107, 1987 Ohio App. LEXIS 7315 (June 4, 1987). *See also State ex rel. Pendell* (a motion deemed a "nullity" or "legal fiction" does not suspend the time for filing a notice of appeal).

{¶ 35} In this case, the parties advised the court that they settled their dispute in the midst of trial. Accordingly, appellant's subsequent request for a new trial is a nullity and accordingly, would not toll the 30-day time limit to file an appeal from the trial court's March 13, 2020 order. The appeal would thus appear to be untimely.

{¶ 36} However, this court must take into consideration the administrative orders issued by the Ohio Supreme Court and this court in response to the COVID-

19 pandemic. Specifically, we must determine if these orders affected the filing deadline to perfect an appeal.

{¶ 37} On March 9, 2020, Ohio Governor Mike DeWine issued an executive order and declared a state of emergency in Ohio in response to COVID-19. On March 27, 2020, Governor DeWine signed into law Am.Sub.H.B. No. 197, which immediately tolled all statutes of limitation, time limitations, and deadlines in the Ohio Revised Code and the Ohio Administrative Code until the expiration of Executive Order 2020-01D or July 30, 2020, whichever was sooner. In response, the Ohio Supreme Court determined that the tolling order in Am.Sub.H.B. No. 197 applied to all Ohio Rules of Court and time requirements, including filing deadlines within the applicable tolling period. *In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Court & Use of Technology*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974. As such, the Ohio Supreme Court immediately issued an order tolling all Ohio Rules of Court, including Rules of Appellate Procedure, and time requirements, including filing deadlines within the applicable period. *Id.* at paragraphs A-D. This order was retroactive to March 9, 2020.

{¶ 38} This court issued an administrative order on April 7, 2020, acknowledging and implementing the Ohio Supreme Court's March 27, 2020 tolling order. Pursuant to paragraph 2 of this court's April 7, 2020 order, "[t]he deadline for filing new appeals is tolled by the [the Ohio Supreme Court's] Tolling Order."

{¶ 39} In this case, the trial court journalized its final order on March 13, 2020. Because this order occurred during the COVID-19 tolling orders, the parties

had until July 30, 2020, to perfect an appeal from the trial court's final order. Appellant filed her appeal on July 29, 2020. Accordingly, we find that the appeal is timely.

## IV. The Appeal

{¶ 40} Appellant raises three assignments of error, each challenging rulings and the evidence that occurred during the liability/compensatory phase of trial. The errors raised are:

> I. Based upon the uncontested facts that were established at trial, the common pleas court erred, as a matter of law, by failing to award the equitable relief sought in the amended complaint, including the imposition of a constructive trust, disgorgement of all misappropriated corporate profits, and transfer of all corporate shares rightfully belonging to the plaintiff-appellant.
>
> II. The common pleas court further erred as a matter of law, and otherwise committed an abuse of discretion, by unjustifiably combining the five separate general verdicts that were returned in favor of plaintiff-appellant into a single judgment against defendant-appellees totaling only $62,000.
>
> III. A total award of just $62,000 in favor of plaintiff-appellant is unsupported by the evidence presented, thereby warranting a new trial upon damages.

{¶ 41} This court cannot address the merits of appellant's assignments of error because the parties either entered into an oral settlement agreement or agreed to enter into a settlement agreement during the middle of trial. This settlement agreement effectively waives any error that occurred during trial. *Bottum v. Jankovic*, 8th Dist. Cuyahoga No. 99526, 2013-Ohio-4914, ¶ 24-25 (because the parties settled the dispute midway through trial, any alleged errors that occurred

during trial are moot).[2]  *See also Barstow v. O.U. Real Estate III, Inc.*, 4th Dist. Athens No. 01CAA49, 2002-Ohio-4989 (once a party enters into a settlement agreement, any alleged errors that occurred prior to the agreements are moot); *Natl. Audobon Soc. v. Schregardus*, 133 Ohio App.3d 245, 248, 727 N.E.2d 614 (10th Dist.1999) ("settlement agreement covering all disputed issues removes those issues from the tribunal's consideration and renders further consideration by the tribunal of the substantive portion of the dispute unnecessary").  Waiver would include any error made by the trial judge in his pretrial rulings or interpretation of the jury verdict.

{¶ 42} Appellant has not assigned any error challenging the validity of the settlement agreement or any error with the trial court's denial of her combined motion.  Yet appellant essentially asks this court to set aside the jury verdict, ignore any settlement agreement reached or any agreement to enter into a settlement agreement, and begin the entire trial anew.

{¶ 43} To reach the merits of appellant's appeal, this court would have to determine whether the parties entered or agreed to enter into a settlement agreement, interpret the terms of the settlement agreement to determine if the jury verdict was incorporated into the agreement or whether it stands independently, and whether the settlement agreement is a valid contract.  The court has not been asked through any assigned error to make these determinations.  But more

---

[2] Much like in the criminal context, a guilty plea generally waives all appealable errors that may have occurred during the trial.  *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991).

importantly, the settlement agreement has not been made part of the record for this court to review. Therefore, this court does not know the terms of the agreement; specifically, if the compensatory damages verdict is included in the settlement agreement or if the verdict was to stand on its own.

{¶ 44} On appeal, the appellant denies that she entered into a settlement agreement with the defendants and that the issues raised are therefore ripe for review. Alternatively, she contends that the purported settlement agreement is either unenforceable or "appears to deal only with punitive damages." *See* Appellant's Reply Brief, p. 8, 10. Although she contests the validity and enforceability of the settlement agreement, we find that the record is clear that it was appellant's intent to settle this dispute in the middle of trial.

{¶ 45} If this was not appellant's counsel's understanding regarding settlement, or if no settlement was in fact reached, counsel had an obligation to object to the trial court terminating the trial and discharging the jury. Counsel could have requested that the court take a recess until the parties prepared a written settlement agreement or, at a minimum, placed the settlement terms on the record. Additionally, if counsel truly believed that the jury intended to award appellant $310,000 and the trial court was mistaken in its unilateral interpretation of the jury verdict, counsel could have proceeded with the punitive phase of trial to preserve any error that may have occurred during the liability/compensatory phase or preserved the filing of a Civ.R. 50(B) motion for judgment notwithstanding the verdict. *See Yatsko v. Yatsko*, 9th Dist. Medina No. 2681-M, 1998 Ohio App. LEXIS

3526 (July 29, 1998) (if trial court's interpretation of the verdict was in error, the party should have proceeded with the trial already in progress and appealed the ruling after the conclusion of the entire trial).

{¶ 46} Moreover, following the trial court's order, appellant could have moved for relief from judgment pursuant to Civ.R. 60(B), contending that the parties did not reach a settlement and the trial court's dismissal of the case was premature. We recognize that appellant requested relief from judgment in her combined motion, but she did so under Civ.R. 60(A), which only allows for relief based on clerical error. A clerical error is defined as "a type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney." *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 498 N.E.2d 1079 (8th Dist.1985), paragraph two of the syllabus. Civ.R. 60(A) "cannot be used to change something which was deliberately done"; it "supplies omissions of a clerical nature which serve to have the record speak the truth." *Id.* at paragraph one of the syllabus. Here, the judgment was not a clerical error but rather the trial court's unilateral belief that the jury only intended to award appellant $62,000. Accordingly, to have a viable chance for relief, appellant's request should have been pursuant to Civ.R. 60(B).

{¶ 47} The record further supports the conclusion the parties entered into an oral settlement agreement because appellant did not deny or dispute in her post-trial motions that a settlement agreement had been reached. In her combined motion, appellant raised a variety of grounds for relief, but did not assert that no

agreement was reached between the parties. In fact, appellant admitted that an oral

settlement agreement was reached:

> "On that same day, based [on] the Court's order, the parties engaged in negotiations and entered an oral, good faith settlement to resolve the case. See Exhibit D [the trial court's March 11, 2020 judgment entry]. These negotiations were predicated on the Court's order that the Plaintiff's verdict was $62,000.
>
> Upon settlement, the jury was dismissed. See Exhibit A [March 11, 2020 transcript of the proceedings]."

*See* Plaintiff's Combined Motion, p. 4.

{¶ 48} Moreover, in appellant's brief in opposition to the defendants' motion

to enforce settlement agreement, appellant did not assert that a settlement had not

been reached. Although appellant argued that she was not bound by the negotiated

agreement and had a right to rescind the agreement based on new evidence, she did

not assert that the trial court was misadvised or mistakenly believed that a

settlement was reached. Again, appellant admitted in the filing that she settled her

claims:

> Based on the Court's ruling on the verdict interpretation and Plaintiff's request for clarification, the parties engaged in extensive settlement negotiations and, eventually, agreed to a settlement of $120,000.00. The punitive damages phase of trial never proceeded. This settlement was predicated on the Court's previous ruling of the jury's verdicts in favor of the Plaintiff in the amount of $62,000.00 total. Both parties relied on this ruling as a basis for their settlement negotiations.
>
> Upon settlement, the jury was dismissed.
>
> * * *
>
> Had the jury's verdict been confirmed prior to the parties' negotiations, a much different outcome would have likely been reached. For example, either the punitive phase of the trial would have moved

forward or a higher negotiated agreement would have been reached between the parties.

*See* Plaintiff's Brief in Opposition, p. 4-5.

{¶ 49} At no time in this motion did appellant assert that she did not enter into a settlement agreement. Although appellant may have changed her mind about settlement, it does not change the fact that counsel advised the trial court that the parties had reached an oral agreement to settle their dispute. Whether the parties had a meeting of the minds or a mutual mistake occurred is not the issue placed before this court because it has not been raised as an assignment of error. *See* App.R. 12 and 16(A). Again, no error has been raised regarding the trial court's denial of the appellant's combined motion or cross-appeal of the trial court's denial of defendant's motion to enforce the settlement agreement. Accordingly, the enforcement or validity of the settlement agreement is not before this court.

{¶ 50} The record supports that the parties advised the court they had settled their dispute, which caused the court to discharge the jury and enter a final judgment. Accordingly, this case is now a traditional contract case where the validity of the purported oral settlement agreement can be addressed. *See generally Prime Properties, Ltd. Partnership v. Badah Ents.*, 8th Dist. Cuyahoga No. 99827, 2014-Ohio-206 (legal procedures to enforce an alleged oral settlement agreement); *Bolen v. Young*, 8 Ohio App.3d 36, 455 N.E.2d 1316 (10th Dist.1982) (if the settlement agreement is extrajudicial in the sense that the trial judge is advised that the parties have agreed to a settlement, but not advised of the terms, then the settlement

agreement can be enforced only if the parties are found to have entered into a binding contract); *Natl. Court Reporters, Inc. v. Krohn & Moss, Ltd.*, 8th Dist. Cuyahoga No. 95075, 2011-Ohio-731.

{¶ 51} Because the parties notified the trial court they had settled their dispute and the court discharged the jury relying on the same, appellant cannot now attack rulings made prior to and during trial — to do so would undermine and ignore the purported settlement agreement. *See Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39-40, 285 N.E.2d 324 (1972) ("To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity * * *."); *820 Co. v. A&M Fin. Group*, 8th Dist. Cuyahoga No. 81306, 2003-Ohio-1723, ¶ 12-15. Whether the alleged settlement agreement is valid and enforceable is not an issue raised before this court, and we offer no opinion on that issue. But based on the record before this court, we cannot afford appellant the relief she requests when there is evidence that the trial court terminated trial based on the assertion of counsel that the parties had settled their dispute.

{¶ 52} The assignments of error are overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, A.J., and
EMANUELLA D. GROVES, J., CONCUR