[Cite as *Morris v. Turk*, 2025-Ohio-2365.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| APRIL MORRIS, | : | |
| Plaintiff-Appellant/<br>Cross-Appellee, | : | |
| | | No. 114375 |
| v. | : | |
| THERESA N. TURK, | : | |
| Defendants-Appellees/<br>Cross-Appellants. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2023 ADV 282828

---

### *Appearances:*

Lewis Brisbois Bisgaard & Smith LLP, Bradley J. Barmen and Theresa A. Edwards; McDonald Hopkins, LLC, and Franklin C. Malemud, *for appellant*.

Byron Legal, LLC, and Evan T. Byron, *for appellees*.

Wargo, Law, LLC, and Leslie Wargo, *for cross-appellee* Jeffrey Morris.

MICHAEL JOHN RYAN, J.:

**{¶ 1}** Plaintiff-appellant/cross-appellee April Morris ("April") appeals the trial court's decision granting summary judgment in favor of defendants-appellees/cross-appellants Alex Morris ("Alex") and Theresa Turk ("Theresa") (at times collectively referred to as "appellees"). For the reasons that follow, we affirm.

**{¶ 2}** This is the third appeal involving these parties. The procedural history and facts are set forth in more detail in *Morris v. Morris*, 2021-Ohio-2677 (8th Dist.) ("*Morris I*"), and *Morris v. Morris*, 2023-Ohio-538 (8th Dist.) ("*Morris II*").

**{¶ 3}** In 2003, Amy M. Morris ("Amy"), Alex's mother, purchased the assets of a market research firm named "Focus Groups of Cleveland Survey Center" — a business that her maternal grandmother owned and operated for over 30 years. From this company, Amy launched a new market research company called "Focus Groups." In 2003, Amy issued herself four stock certificates accounting for 125 shares each, totaling 500 outstanding shares.

**{¶ 4}** In 2010, Amy passed away, leaving Alex, who was a minor at the time, as her sole heir. Amy's estate plan consisted of a pour-over will and trust with Alex as the sole beneficiary. Amy's will left all the tangible personal effects of her estate to Alex. The intangible assets of the estate, including Amy's business interests, were left through the will's residual clause for care and management by the trustees of the trust. Amy had nominated her sister, April, and her parents, Bonnie Morris ("Bonnie") and Jeffrey Morris ("Jeffrey"), as co-executors of the estate.

{¶ 5} Amy had designed the trust to hold property for Alex's benefit until Alex turned 25, at which time one-half of the trust property would be distributed to her. The remaining trust property was to be managed by the trustees until Alex turned 30 years old, at which time the remaining assets would be released to her.

{¶ 6} In November 2011, attorney Edward Graham filed an application to relieve Amy's estate from probate, which was submitted on behalf of April as the applicant. The application listed the estate property as 125 shares of Focus Groups' stock, with a value of $26,048.10. No other assets were listed, including personal and real property, or the remaining 375 shares of Focus Groups that Amy owned at the time of her death. Subsequent to the administration of the estate, attorney Graham assisted with April's purchase of the trust property, i.e., the 125 shares of Focus Groups' stock. To facilitate this purchase, April resigned as co-trustee of the trust and then acquired the 125 shares of Focus Groups' stock by "assuming $26,048.10" of the company's secured debts.

{¶ 7} Despite being the sole beneficiary under both her mother's will and trust, Alex was never notified of the existence of these documents, nor was she notified of any legal proceedings regarding her mother's estate. In January 2017, however, Alex became aware that her mother had left a will and trust and that she was the sole beneficiary under those documents.

{¶ 8} Alex subsequently filed a civil action against April, Jeffrey, and Focus Groups. *See Morris v. Morris*, Cuyahoga C.P. No. CV-17-886903 ("the 2017 case"). The amended complaint alleged that April, Jeffrey, and Focus Groups had engaged

in fraudulent concealment, fraud, civil conspiracy, breach of fiduciary duty, interference with an expectancy inheritance, negligence with respect to Amy's will and the trust, and conversion of property.[1]

{¶ 9} Alex sought an accounting from the appellees and Focus Groups of corporate income, expenditures, and profits beginning in 2010. Alex further sought a declaratory judgment that the transfer of 125 shares of Focus Groups' stock from the trust to April was void. As relief, Alex sought compensatory and punitive damages, attorney fees, prejudgment interest, disgorgement of profits of Focus Groups, an order compelling April to transfer the 125 shares back to the trust, and a constructive trust over any assets unlawfully retained by April, Jeffrey, and Focus Groups. April, Jeffrey, and Focus Groups asserted counterclaims against Alex for civil theft, conversion, and declaratory relief.

{¶ 10} In March 2020, the matter proceeded to a bifurcated jury trial. The jury was to first consider liability and compensatory damages and was then to consider punitive damages, if necessary. After the close of evidence in the first phase of the trial, the trial court granted Jeffrey's motion for directed verdict on Alex's claims. The jury deliberated on the remaining claims against April and Focus Groups.

{¶ 11} The jury ultimately found in favor of Alex on her claims for fraud, breach of fiduciary duty, tortious interference, conversion, and civil conspiracy. The

---

[1] Alex also asserted a claim against Graham and his firm for legal malpractice but dismissed the claim prior to trial.

jury awarded an amount of $62,000 to Alex on her claims. Additionally, the jury found in favor of April and Focus Groups on the claims of civil theft and conversion, awarding $1 on each claim.

{¶ 12} The case was adjourned for the punitive-damages phase of the trial. Prior to the jury reconvening, the parties and the court discussed the jury verdict. Alex argued that the award was $62,000 on each claim for a total of $310,000; April and Focus Groups argued that the total awarded to Alex was $62,000. Alex asked the trial court to seek clarification from the jury. Although the jury was still empaneled, the trial court refused Alex's request to seek clarification and found that the total award was $62,000.[2] The trial court informed the jury that the parties had settled the case on the remaining issues in the lawsuit and discharged the jury. The terms of the settlement agreement were not placed on the record prior to the jury's discharge, nor were the terms of the settlement filed with the court.

{¶ 13} On March 17, 2020, April and Focus Groups filed a motion to enforce the settlement agreement and requested costs.[3] Alex opposed the motion and simultaneously filed a combined motion for reconsideration, relief, stay, and new

---

[2] The parties discussed the verdict with the jurors after they were discharged. According to Alex, the jury had intended to award her $62,000 on each claim, for a total of $310,000. Alex asked the trial court to reconsider her motion for clarification or reempanel the jury to obtain clarification, but the trial court declined.

[3] The day after the jury was discharged, counsel for April and Focus Groups emailed counsel for Alex a proposed settlement agreement and release. According to April, in response, Alex's attorney requested that the parties renegotiate the settlement agreement. April declined.

trial under Civ.R. 59, 60(A), 61, and 62; the basis of her motion was that the trial court erred in determining the jury only awarded her $62,000.

{¶ 14} The trial court denied both motions. With respect to April and Focus Groups' motion, the court ruled that it did not have jurisdiction to enforce the settlement agreement because the "court's order disposing of this case did not incorporate the terms of the settlement or expressly retain jurisdiction over [the] settlement." The court summarily denied Alex's motion. Alex appealed. *See Morris I*, 2021-Ohio-2677 (8th Dist.).

{¶ 15} In *Morris I*, Alex challenged certain rulings of the trial court and the evidence that had been presented during the liability and compensatory phase of trial. This court determined that it could not address the merits of Alex's assignments of error because the parties entered into a settlement agreement during the middle of trial, which effectively waived any error that occurred during trial. *Id.* at ¶ 41. This court further determined that Alex could not challenge any of the court's findings made prior to trial: "[b]ecause the parties notified the trial court they had settled their dispute and the court discharged the jury relying on the same, [Alex] cannot now attack rulings made prior to and during trial — to do so would undermine and ignore the purported settlement agreement." *Id.* at ¶ 51. Finally, this court acknowledged that whether the alleged settlement agreement was valid and enforceable was not an issue raised in the appeal. *Id.*

{¶ 16} In April 2022, Alex moved for relief from judgment pursuant to Civ.R. 60(B)(5), again claiming that the trial court erred in unilaterally determining the

amount of the jury award. The trial court denied her motion. Alex appealed, arguing that the trial court abused its discretion in denying her motion for relief from judgment. *See Morris II*. This court overruled Alex's assignments of error, finding that Alex was attempting to relitigate the trial court's unilateral determination that the jury's award was $62,000; this time the only difference being that she used Civ.R. 60(B)(5) as the basis of her challenge. Therefore, res judicata applied. *Id.* at ¶ 36.

{¶ 17} The parties returned to probate court. In May 2022, Alex filed an application to reopen the estate, primarily to probate the outstanding Focus Groups' shares. The probate court opened the estate, finding there were 375 shares that had never been probated through Amy's estate, nor had there been a civil or probate final adjudication of any claim regarding the ownership of those shares. The court determined that the doctrine of res judicata did not bar the probating of the additional 375 shares.

{¶ 18} In August 2023, April filed a first amended complaint for declaratory judgment (Cuyahoga P.C. No. 2023 ADV 282828). April sought a declaratory judgment that the transfer of 125 shares of Focus Groups' stock represented 100 percent of the ownership shares of Focus Groups and an order divesting Alex of any and all claims to ownership. Alex responded by filing a complaint to remove Jeffrey as trustee and to appoint a successor trustee, Theresa (Cuyahoga P.C. No. 2023 ADV 283976). Alex further requested a surcharge against Jeffrey, individually and as trustee, for all amounts due and owing for any losses incurred by the trust based on

his actions, inactions, and wrongful conduct as trustee, and that he be ordered to provide an accounting. The probate court consolidated the two cases.

{¶ 19} The parties each moved for summary judgment. Jeffrey filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment. The probate court granted Jeffrey's motion; granted in part and denied in part April's motion for summary judgment; and granted in part and denied in part Alex and Theresa's motion for summary judgment.

{¶ 20} As to Jeffrey, the court found Alex's claims were barred by res judicata. Additionally, the court noted that Jeffrey resigned as trustee in March 2024 and that from 2020 through March 2024 there had been no trust assets for Jeffrey to account for, because the remaining 375 shares of Focus Groups were not transferred to the trust during the time that Jeffrey served as trustee.

{¶ 21} The probate court further found that, unlike the 125 shares, the ownership of the 375 shares had not been litigated in the common pleas court and, therefore, that court had no jurisdiction to determine ownership over the shares. Because the shares had just been admitted to probate, the court reasoned they were an estate asset to which Jeffrey had no control over because he was no longer the trustee.

{¶ 22} The court found in favor of April as to ownership of the 125 shares; specifically, the court found that any claim by Alex to the 125 shares of stock had been previously litigated and was therefore barred by res judicata. The court denied the rest of April's claims, most importantly denying any claim to the 375 shares.

**{¶ 23}** The court noted that while April's acquisition of 125 shares had made her the "de facto" owner of Focus Groups, upon the transfer of the remaining 375 shares to Alex, Alex would hold a 75 percent ownership interest in the company, while April would retain 25 percent ownership interest:

> April was considered the sole owner of the company while she held 125 shares of [Focus Groups], as the remaining 375 shares were held in the name of the Decedent, and thus did not confer ownership to any party. However, upon the transfer of the remaining 375 shares of [Focus Groups], Alex will thereupon obtain a 75% ownership interest in [Focus Groups].

Judgment Entry (Sept. 10, 2024).

**{¶ 24}** Finally, the court appointed Theresa as the successor trustee.

## Assignments of Error on Appeal and Cross-Appeal

**{¶ 25}** April timely filed a notice of appeal and raises the following assignments of error for our review:

> I. Based upon the doctrine of res judicata, the Probate Court erred, as a matter of law, and otherwise committed an abuse of discretion by [1)] vacating the Common Pleas Court's full adjudication, previously affirmed by this Court, of the Estate's sole asset, the shares of Focus Groups, and/or 2) issuing factual findings regarding the ownership of Focus Groups without jurisdiction.
>
> II. Based upon R.C. 2109.35, the Probate Court further erred as a matter of law, and otherwise committed an abuse of discretion because it vacated the August 8, 2019 judgment awarding April full ownership of Focus Groups without jurisdiction.

**{¶ 26}** Theresa, as trustee, and Alex raise the following cross-assignments of error in their cross-appeal:

> I. The Probate Court erred in holding that April is the rightful owner of 125 shares of [Focus Groups].

II: The Probate Court erred in holding that all claims against Jeff[rey] are now barred.

## Law and Analysis – Appeal

{¶ 27} We combine April's assignments of error for review. April argues that the probate court abused its discretion by determining the ownership of Focus Groups and by "vacating" the common pleas court's adjudication of the case.

## Standard of Review – Summary Judgment

{¶ 28} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, the appellate court affords no deference to the trial court's decision and independently reviews the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.); *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30.

{¶ 29} A party may seek affirmative relief by moving for summary judgment as to all or any part of a claim. Civ.R. 56(A). "[O]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Am. Dental Ctr. v. Wunderle*, 1993 Ohio App. LEXIS 4437, *4 (8th Dist. Sept. 16, 1993), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion

and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. Civ.R. 56(A); *Grafton* at 105.

{¶ 30} The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* To accomplish this, the movant must be able to point to Civ.R. 56(C) evidentiary materials, which include "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any[,]" for the court's consideration in rendering summary judgment. *Id.*; Civ.R. 56(C). "These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher* at 293.

{¶ 31} After the moving party's initial burden is satisfied, the nonmoving party "'may not rest upon the mere allegations or denials in the pleadings.'" *Id.*, quoting Civ.R. 56(E). Rather, the nonmoving party's reciprocal burden is triggered, requiring it to set forth specific facts, by the means listed in Civ.R. 56(C), showing that there remains a genuine issue for trial. *Id.*

**Res Judicata and Subject-Matter Jurisdiction**

{¶ 32} April claims that the common pleas court had already determined she was the sole owner of Focus Groups in the 2017 case; therefore, the probate court's judgment "overruling" the common pleas court's decision is barred by res judicata.

{¶ 33} The doctrine of res judicata prevents repeated attacks on a final judgment and applies to all issues involving the same subject matter between parties that were or could have been litigated. *Blue Durham Properties v. Krantz*, 2019-Ohio-4459, ¶ 22 (8th Dist.). Res judicata ensures the finality and stability of judicial decisions, deters vexatious litigation, and allows courts to resolve other disputes. *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60 (1990).

{¶ 34} According to April, because the common pleas court had already determined that she was the sole owner of Focus Groups, the probate court had no jurisdiction to decide who owned the 375 shares.

{¶ 35} "The question of subject-matter jurisdiction is a question of law, subject to a de novo review on appeal." *Cuyahoga Cty. Bd. of Commrs. v. Daroczy*, 2008-Ohio-5491, ¶ 4 (8th Dist.). Under this standard of review, the court independently reviews the record and affords no deference to the trial court's decision. *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013-Ohio-1035, ¶ 8 (8th Dist.).

{¶ 36} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-

4275, ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). Since subject-matter jurisdiction concerns the power of a court to adjudicate the merits of a given case, it cannot be waived and may be challenged at any time by the parties. *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11, citing *United States v. Cotton*, 535 U.S. 625 (2002).

{¶ 37} R.C. 2305.01 grants the general division of common pleas court "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." The common pleas court is a "court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.'" *Ohio High School Athletic Assn. v. Ruehlman*, 2019-Ohio-2845, ¶ 7, quoting *Kuchta* at ¶ 20. Given this broad grant of general jurisdiction, when a court of common pleas has been found to lack subject-matter jurisdiction, "it is almost always because a statute explicitly removed that jurisdiction." *Ruehlman* at ¶ 9.

{¶ 38} In contrast to the general division of the court of common pleas, Ohio's probate courts are courts of limited jurisdiction. *Ruehlman* at ¶ 8. Thus, "'[t]hose matters that may be properly placed before the court are enumerated and limited in scope'" by statute. *Lynch v. FIG as Custodian for FIG OH18, LLC*, 2025-Ohio-1553, ¶ 14 (8th Dist.), quoting *Corron v. Corron*, 40 Ohio St.3d 75, 77 (1988).

{¶ 39} R.C. 2101.24 gives probate courts exclusive jurisdiction "[t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates." R.C. 2101.24(A)(1)(c); *see also Grimes v. Grimes*,

2007-Ohio-5653, ¶ 17 (4th Dist.). By giving probate courts exclusive jurisdiction over the distribution of estate assets, the General Assembly has announced its desire to remove these matters from the jurisdiction of the general division of the common pleas court. *See Lynch* at *id.*

{¶ 40} Prior to its September 2024 order, the probate court had not probated the 375 shares of Focus Groups. Accordingly, the general division of the common pleas court would have been without jurisdiction to distribute those shares of stock.

{¶ 41} As to April's claim that the issue of the ownership of the 375 shares was barred by res judicata, we find that it was not. Because the issue of ownership of the 375 shares was not determined prior to the probate court's September 2024 order, Alex was not barred from asking the probate court to determine ownership of the 375 shares. *See Estate of Boccia*, 2008-Ohio-4764, ¶ 26 (11th Dist.) (holding that a ruling on objections to an estate inventory does not bar a subsequent claim to an estate's asset based on res judicata unless the probate court has actually litigated the claim regarding a particular asset).

{¶ 42} Additionally, April alleges that she is the rightful owner of the 375 shares because she purchased 125 shares and the common pleas court "determined" she was the "sole owner" of Focus Groups. Therefore, according to April, she is the rightful owner of the remaining 375 shares.

{¶ 43} This argument fails because no court of competent jurisdiction ever declared April the "sole owner" of Focus Groups. In the 2017 case, the common pleas court stated on the record that it was the parties' intent to convey full

ownership to April upon purchase of the 125 shares, but no judgment or legal determination was ever made to that effect. Contrary to April's assertions, no party litigated the issue of ownership of the 375 shares in the common pleas court and that court never decided the ownership of those shares.[4]

{¶ 44} Moreover, this court's statement in *Morris I*, 2021-Ohio-2677 (8th Dist.), that April owned Focus Groups was not a determination this court made on appeal. April incorrectly interprets a statement made in *Morris I* during the court's recitation of the factual history of the case: "To facilitate th[e] purchase [of 125 shares of stock], April resigned as co-trustee of the [t]rust, and then acquired the 125 shares of Focus Groups stock by 'assuming $26,048.10' of the company's secured debts. From that point on, April owned Focus Groups." *Id.* at ¶ 7. Again, this statement was included in the factual background of the opinion; it was not a factual determination this court made.

{¶ 45} Finally, R.C. 2109.35, which governs vacation of a court order settling a fiduciary's account, is inapplicable to this case. Alex never sought to have the probate court vacate the prior accounting of the estate; Alex moved to reopen the estate so that the court could consider the remaining 375 shares that had yet to be probated.

---

[4] While April may have been the de facto owner of Focus Groups at the time she acquired the 125 shares, there were 375 shares left outstanding that had yet to be probated. We acknowledge that April was considered the sole owner of Focus Groups while she held 125 shares, but the remaining 375 shares were held in Amy's name until they became part of her estate.

{¶ 46} Based on the foregoing, the probate court's distribution of the 375 shares of Focus Groups' stock was not barred by res judicata and was properly determined by the probate court to be part of the estate.

{¶ 47} Accordingly, April's assignments of error are overruled.

**Law and Analysis – Cross-Appeal**

{¶ 48} The appellees argue in their first cross-assignment of error that the trial court erred in deciding that the 125 shares of Focus Groups' stock belonged to April. According to appellees, April never properly purchased the 125 shares and, therefore, any judgment stating otherwise is void. We disagree.

{¶ 49} The probate court found that any claim by Alex to the 125 shares of Focus Groups' stock that were transferred to April in December 2012 was litigated in the common pleas court and is therefore barred by res judicata. We agree.

{¶ 50} Again, res judicata bars relitigation of a matter that was raised or could have been raised on direct appeal when a final, appealable order was issued in accordance with the law at the time. *Morris II*, 2023-Ohio-538, at ¶ 36 (8th Dist.), citing *State v. Griffin*, 2013-Ohio-5481. Had Alex wanted to challenge the distribution of the 125 shares of stock, she could have done so in *Morris I*, 2021-Ohio-2677 (8th Dist.). Her claims are now barred by res judicata.

{¶ 51} The first cross-assignment of error is overruled.

{¶ 52} In the second cross-assignment of error, Alex contends that the trial court erred in granting Jeffrey's motion for judgment on the pleadings, or, in the alternative, motion for summary judgment.

{¶ 53} Loc.App.R. 3(B)(2) provides the following:

A party is required to file only one notice of appeal from a judgment entered in cases consolidated in the trial court. The notice of appeal must list all consolidated case numbers. The appeal will proceed under one case number unless otherwise ordered by the court.

{¶ 54} "The act of consolidating cases is a procedural tool advancing judicial efficiency, but consolidation does not merge the two cases." *U.S. Bank Trust N.A. v. Janossy*, 2018-Ohio-2228, ¶ 6 (8th Dist.), citing *State ex rel. Shumaker v. Nichols*, 2013-Ohio-4732, citing *First Natl. Bank of Pulaski v. Curry*, 301 F.3d 456, 467 (6th Cir. 2002) ("Despite the consolidation of the two actions in the present case, . . . the actions did 'not merge . . . into a single cause.'").  April filed her notice of appeal on September 20, 2024; Jeffrey never filed a notice of appeal.  Alex subsequently filed her notice of cross-appeal, but the cross-appeal did not reference that there were consolidated trial court cases or list the case number pertaining to Jeffrey's case, Cuyahoga P.C. No. 2023 ADV 283976, as required by our local appellate rules.

{¶ 55} Therefore, we cannot consider the cross-assignment of error with respect to Cuyahoga P.C. No. 2023 ADV 283976 and find that the cross-appeal as to claims against Jeffrey are not properly before this court.

{¶ 56} The second cross-assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellees and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR